FILED

1  Andrew Jay Kulick, State Bar Number: 134567
2  % LAW OFFICES OF ANDREW JAY KULICK
   21704 West Golden Triangle Road, Suite 301
   Saugus, California 91350-2617
3  Telephone/Fax: (661) 253-1543
   Internet:
4

2011 SEP 28  PM 2: 51

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

5  Attorney for Plaintiff, FRANK DUFOUR, an individual

6

7              **UNITED STATES FEDERAL DISTRICT COURT,**

8              **CENTRAL DISTRICT OF CALIFORNIA**

9

10  FRANK DUFOUR, an individual,                )   Case Number: **CV11-8054** CAS(SX)
11               Plaintiff.                     )   **Complaint For:**
12  v.                                          )   1) Fraud and Misrepresentation
                                                )   2) Negligence;
13  ROBERT ALLEN an individual,                 )   3) Breach of Contract;
    ENLIGHTENED WEALTH INSTITUTE                )   4) Recession with Constructive Trust;
14  INTERNATIONAL. L.C a Utah corporation,      )   5) Declaratory Relief.
    ENLIGHTENED WEALTH INSTITUTE,               )
15  L.C. a Utah corporation, PROSPER INC, a     )
16  Utah corporation, GREEN PLANET f/k/a        )
    FREEDOM MORTGAGE, an unknown                )
17  business entity, PNC BANK f/k/a             )
18  NATIONAL CITY, an unknown business          )
    entity, OPTEUM n unknown business entity,   )
19  MIDLAND MORTGAGE COMPANY, an                )
20  unknown business entity, AURORA LOAN        )
    SERVICES, an unknown business entity,       )
21  SHERSON LEHMAN, an unknown business         )
    entity, CHARLIE PAYNE, an individual,       )
22  TRENT STAGGS, an individual and DOES 1      )
23  through 10  inclusive,                      )
                                                )
24               Defendants.                    )—
                                                )
25

26  Plaintiff, FRANK DUFOUR, an individual, (hereinafter referred to as "plaintiff") alleges:

27  ///

28                                    1

**PLAINTIFFS' COMPLAINT**

## GENERAL ALLEGATIONS:

1) Plaintiff is an individual, residing in the State of California, County of Los Angeles.

2)      The jurisdiction of this Court over the subject matter of this action is predicated on 28 USC §1332. The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

3)      Plaintiff is informed and believes and herein alleges that defendant, ROBERT ALLEN is an individual residing in the State of Utah.

4)      Defendant, ROBERT ALLEN promotes and conducts real estate seminars in the State of California, County of Los Angeles by and through his corporation entitled ENLIGHTENED WEALTH INSTITUE INTERNATIONAL, L.C. (hereinafter referred to as "EWI"), a Utah corporation.

5)      Defendant, ROBERT ALLEN also promotes and conducts real estate seminars in the State of California, County of Los Angeles by and through his corporation entitled ELIGHTENED WEALTH INSTITUTE, L.C. (hereinafter referred to as "EWI-2"

6)      Plaintiff alleges that defendant, TRENT STAGGS is an individually who was the former branch manager of co-defendant, FREEDOM MORTGAGE (hereinafter referred to as FREEDOM) whose successor in interest is the named defendant, GREEN PLANET which is an unknown business entity. FREEDOM was doing business by arranging loans in the State of California, and in the County of Los Angeles.

7)      Plaintiff alleges that the defendants, SHEARSON LEHMAN, an unknown business entity, PNC BANK f/k/a NATIONAL CITY are unknown business entities who were at all times entities obtained loans from TRENT STAGGS due to his relationship with each of these lenders in his capacity as either an employee or agent.

8)      Plaintiff alleges that OPTEUM is an unknown business entity doing business in the County of Los Angeles, State of California.

9)      Plaintiff alleges that MIDLAND MORTGAGE is an unknown business entity doing business in the County of Los Angeles, State of California.

2

**PLAINTIFFS' COMPLAINT**

10)     Plaintiff alleges that PROSPER INC. is a Utah corporation doing business in the County of Los Angeles, State of California.

11)     Plaintiff alleges that defendant, CHARLIE PAYNE is an individual doing business in the County of Los Angeles, State of California as a real estate appraiser.

12)     Plaintiff is informed and believes and upon such information and belief alleges that the defendants, named herein as DOES 1 through 100, are domiciled in the State of California and/or doing business in the State of California; that the true organizational structure and/or ownership of defendants' DOES 1 through 100 is unknown to plaintiff at this time. Plaintiff is informed and believes and thereon alleges that the defendants named as DOES 1 through 100, whether individual, corporate or otherwise are unknown to plaintiff and therefore plaintiff sues said defendants, DOES 1 through 100, by such fictitious names. Plaintiff will amend this complaint when the true name(s) and capacity(s) of said defendants', DOES 1 through 100 have been ascertained.

13)     Plaintiff is informed and believes and herein allege that each of these defendants, including those herein named DOES are the agents, servants and employees of each co-defendant, and in doing the things herein alleged each acted within the course and scope of such agency and employment with full knowledge and consent of the remaining co-defendants.

14)     At all times herein mentioned, unless otherwise expressly set forth herein, defendants and each of them conducted business with plaintiffs and entered into contracts with them within the County of Los Angeles, State of California and/or obligations upon which this action is based, were incurred by defendants and each of them in above named Court District and/or the defendants, and each of them resided in the above named Court district upon which this action is based and obligation were incurred.

15)     Defendant, ROBERT ALLEN (hereafter referred to as "ALLEN") by and through his company EWI or EWI-2 (contacted the plaintiff via internet, on or about September 16, 2006 to attend one of defendant ALLEN's, wealth building seminars in which Mr. ALLEN was going to select a few students to work along side of him and join his "success team" which was

3

intended for those who wanted "to learn how to become a millionaire." Defendant, ALLEN concluded his e-mail correspondence by asking "Are you ready to be our next millionaire success story?" After contacting representatives of EWI and going through a series of sham interviews it was determined that plaintiff was one of the select few to work directly with defendant ROBERT ALLEN. (Plaintiff is informed and believes and thereinafter alleges that in reality these interviews were scam intended to wet the plaintiff's appetite in order to entice him depart with his hard eared earnest money.

16)     After being qualified plaintiff was told all he had to do was use ALLEN'S study materials, follow the guidance of his coaches and pay defendant ALLEN eight thousand ($8,000.00) dollars to get started.

17)     Plaintiff, FRANK DUFOUR, is a retired doctor, lives on fixed income and finding his income dramatically decreased, needed to look for a part-time career to supplement his retirement income. Plaintiff was ripe for ALLEN'S sales pitches, promising that if he strictly followed defendant ALLEN's recommendations he would be the **"next millionaire success story"** and all he had to do was pay the defendant, ALLEN the $8,000.00 fee which he did.

18)     In turn defendant ALLEN referred plaintiff to co-defendant PROSPER, INC. (hereafter referred to as "PROSPER") located in Provo, Utah. Plaintiff is informed and believes and thereon alleges that PROSPER is an affiliated company of defendant. ALLEN. Defendant, PROSPER provided the plaintiff with his study materials, assigned him a coach. This coach would then work with plaintiff via a series of ten (10) one on one coaching sessions and help him implement the "wealth creation system" as it was commonly called.

19)     Plaintiff did in fact receive a series of weekly coaching sessions provided by one of PROSPER'S employees, who identified himself as TODD BENSON (hereafter referred to as "BENSON". BENSON coached plaintiff an hour a week for a period of ten (10) weeks.  Near the end of the ten week period BENSON told plaintiff that they could help the plaintiff get started implementing ALLEN's "wealth creating system" by referring him to someone who could locate income producing properties and help him obtain financing so that plaintiff could

4

purchase these properties.

20)   Plaintiff was referred to a person identified as EMILY MERKLEY (hereafter referred to as "MERKLEY") who BENSON represented to plaintiff was a former student of ALLEN's and was one of the success stories who now was employed with a company entitled CFE Mortgage (hereinafter referred to as "CFE").

21)   Plaintiff contacted MERKLEY believing she would help them procure properties as stated by BENSON. MERKLEY represented herself as one of the principal owners of CFE Mortgage.  MERKLEY affirmed what plaintiff had been told by defendant BENSON, that she could locate properties for him to invest in, finance the purchases and then help him manage the properties. Thereafter MERKLEY began sending via e-mail, the plaintiff, information on various properties. All of these properties which MERKLEY sent plaintiff information on were located outside the state of California.

22)   After a few weeks of this, MERKLEY referred plaintiff to a person identified as KENNY GREGG (hereinafter referred to as "GREGG") who MERKLEY represented was another student of defendant ALLEN, and had worked with her. MERLELY told the plaintiff that GREGG could arrange and facilitate the purchase of several properties MERKLEY had provided plaintiff and in particular several properties located in Jackson, Mississippi which were available for sale according to MERKLEY and were "well below market value".

23)   GREGG represented to plaintiff that if he purchased the Jackson, Mississippi properties plaintiff would make between $100.00 and $150.00 beyond taxes and expenses per month in cash flow. Additionally, as an incentive to purchase these properties GREGG told plaintiff that these investments would increase in value between 3 and 7 percent annually. Pursuant to these conversations and the representations made by GREGG the plaintiff was excited about the prospects of purchasing these properties.

24)   In subsequent telephone conversations with GREGG about the Jackson, Mississippi properties, GREGG told the plaintiff that these four (4) single family residences which were tenant occupied and "fully rehabbed;" thus, if plaintiffs purchased several of the

5

houses he had for sale they all had "equity" already built into them for positive cash flow. GREGG stated that he needed to sell these properties quickly in order to "free up some funds for another venture" he was involved in. He stated that surrounding area maintained a 90% occupancy rate and that if plaintiff purchased these properties it would be like buying them "wholesale" at the current market rate. GREGG e-mailed plaintiff property profiles in which it was documented that the rentals of similar properties in the areas were generating between $450.00 and $650.00 per month in gross income with a 90% occupancy rate.

25)     Enticed by the information provided and believing that everything seemed like it was going forward according to defendant, ALLEN's plan. Plaintiff received appraisals from an appraiser identified as CHARLAY PAYNE. These appraisals identified the properties actual value as that which had been represented to plaintiff the properties were worth. As a result on or about November 15, 2006 MERKLEY e-mailed the plaintiff a *purchase offer agreement* to buy two (2) of the Jackson, Mississippi properties through GREGG with estimated escrow closing within thirty (30) days. Defendant GREGG shortly thereafter e-mailed plaintiff four (4) additional purchase offer agreements for an additional four (4) properties located in Jackson, Mississippi which the plaintiff did. Plaintiff received

26)     The shortly thereafter plaintiff was enticed to purchase two (2) more additional properties, which defendant, GREGG told plaintiff would be "flipped" right away. Plaintiff purchased these properties in Jackson, Mississippi for $135,000.00 a piece.

27)     At that time plaintiff owned eight (8) properties in Jackson, Mississippi.

28)     Defendant GREGG told the plaintiff he could help him obtain financing for these properties because he also worked as a loan agent named defendant TRENT STAGGS (hereinafter referred to as "STAGGS") who was a loan broker for CFE MORTGAGE and also the STAGGS MORTGAGE GROUP. Thereafter plaintiffs did pursue financing through GREGG, STAGGS and CFE MORTGAGE.

29)     Defendant, STAGGS later arranged financing for the properties which were purchased by plaintiff through defendants, MILENIUM HOME LOANS, OPTEUM

6

FINANCIAL SERVICES and later through MIDLAND MORTGAGE. Plaintiff further alleges and herein believes that STAGGS, was at all times the driving force, behind these deals, who controlled all information that was provided to plaintiff by MERKLEY and GREGG, including but not limited to the property profiles, appraisals, loan information and strategies that were made by MERKLEY and GREGG to entice the plaintiff to purchase these properties.

30)   On or about June 20, 2006 and thereafter using the plaintiff's money and credit, GREGG with the help of defendant, STAGGS ended up selling numerous Jackson, Mississippi properties to plaintiff.

31) In December 2006 having not received the promised income necessary to become a millionaire plaintiff was enticed again to enter into a property management agreement with a person identified as JOHN BEEL (hereinafter referred to as "BELL") and defendant STAGGS whereby they would effectuate the promised returns on plaintiff's investment. BELL and defendant, STAGGS would collect a fee each time they rented out one of the properties and actively manage the properties for the plaintiff. Plaintiff paid defendant, STAGGS the sum of $50,000.00. BELL and defendant STAGGS did rent these properties; however they were rented the properties to tenants via a series short-term lease agreements. The tenants vandalized properties stealing such things as the air conditioning units, and other fixtures. As a result, instead of making $100.00 and $150.00 per month as promised, plaintiff was losing money, spending thousands of dollars making repairs to the damaged units each time a tenant moved out. On the other hand defendants BELL and STAGGS continued to collect their management fee each time they moved a new tenant in and for their active management of these properties

32)   In or about October 2007 it became evident to the plaintiff that he needed to sell these problematic properties because they were costing him thousands of dollars to maintain. He asked GREGG and defendant STAGGS to help him sell the properties; however plaintiff was informed that the property values of these properties had substantially dropped and in the case of one of the properties which plaintiff had purchased only a few months before for $63,000 was now only worth $2,000.

7

33)      After several months of unsuccessfully trying to sell the properties BELL dropped out of sight taking with him $6,000.00 of plaintiff's recently received repair money. Likewise shortly thereafter defendant STAGGS stopped returning the plaintiff's phone calls and also dropped out of sight.

34)      In his efforts to recoup his losses plaintiff called defendants FREEDOM MORTGAGE, and AURORA because defendant STAGGS worked for them as a branch manager and in fact the majority of the loans that were done through STAGGS were procured through FREEDOM MORTGAGE and AURORA.

35) Recently, plaintiff was informed that the universally loans packaged by defendant STAGGS were in fact a scam, in that the defendant, STAGGS intentionally misrepresented the true values of the properties by dramatically over-inflating the properties values. Plaintiff is informed and believes and herein contends that defendant STAGGS using the persons identified as MERKLEY and GREGG knew or should have known the true values of the properties. Likewise plaintiff further alleges and believes that defendants FREEDOM MORTGAGE and AURORA intentionally turned a blind eye to the loan applications tendered to them by STAGGS even after it was determined the values of these properties were substantially overstated but funded the loans anyways because defendant, STAGGS was a branch manager of these companies.

A) Plaintiff has subsequently deeded these properties to DUFOUR PROPERTIES, LLC for management purposes only. Plaintiff remains responsible for all mortgage payments.

## FIRST CAUSE OF ACTION:

### (Fraud/Misrepresentation against Defendant, ALLEN, STAGGS and Does 1-100)

36)      Plaintiff hereby re-alleges as fully set forth herein General Allegations of paragraphs 1 through 35.

37)      Plaintiff is informed and believes and thereon alleges that defendant, ROBERT ALLEN who is in the business of conducting real estate conducts an aggressive marketing

8

campaign via e-mail and other techniques to entice unsuspecting consumers to attend his so called wealth building seminars throughout Southern California and the United States which he sells from several hundred dollars to several thousand dollars.

38)     In fact, plaintiff was contacted by defendant ALLEN through one of his e-mails, asking whether the plaintiff was "ready to be our next millionaire success story?" and that ALLEN was looking for a few "select" students to work along side him and join his "success" team.

39)     Plaintiff was then put through an interview to determine if he was serious and willing to invest in his future. These interviews consisted of asking plaintiff questions about his personal financial situation ALLEN's staff congratulated him on being selected for the program. Plaintiff alleges these interview were in reality a sham only intended to find out how much money plaintiff had and what kind of credit he had.  At the time plaintiff was retired and needed to find a way to supplement his fixed income. As a result, plaintiff paid the $8,000.00 to ALLEN for his coaching and wealth building system.

40)     However when plaintiff was contacted by his coach BENSON, it turned out he was not employed by ALLEN or his company, EWI but in reality another company identified herein as defendant, PROSPER, INC. located in Provo, Utah. They supplied plaintiff with study materials required by defendant, ALLEN and coaching ultimately received by plaintiff.

41)     Toward the end of the ten (10) week coaching sessions BENSON offered to help plaintiff get started by introducing him to MERKLEY, another student of the ALLEN wealth building systems who was represented to plaintiff had succeeded using defendant, ALLEN's method.  After contacting MERKLEY she offered to send plaintiff property profiles on properties to invest in and then she and her associates could help plaintiff acquire tenants and manage the properties.

42)     Ultimately, MERKLEY contacted the plaintiff telling him about GREGG. When Plaintiff contacted GREGG he told plaintiff that he had four (4) properties that "he need to sell in order to free up some funds for another investment he wanted to get into". He further stated that

9

the price for all four properties was less than the cost of one property in California, and besides "if he purchased all four properties it would be like he was getting the properties at last years prices" and that acquiring these properties was like purchasing them for "wholesale" prices.

43) Each of the property profiles sent by MERKLEY and GREGG documented that each property was in good condition having been recently rehabilitated and that it had a 90% or better occupancy. As it turned out the property profiles and appraisals used to convince plaintiff to buy the properties were prepared and produced defendant TRENT STAGGS.

44) Plaintiffs asked MERKLEY and GREGG what realtor he should use. Plaintiff was told he did not need a realtor to transact these purchases and that since GREGG was the party selling the properties, that GREGG, MERKLEY, and their associate defendant STAGGS could represent both sides of the transaction.

45) Justifiably relying on the representations made by GREGG, MERKLEY and STAGGS as to the values and condition of the subject properties plaintiff purchased the four (4) properties from GREGG. Over the course of several months plaintiff's reliance on the representations made to him led him to purchase the subject properties several times each time acquiring financing through STAGGS based on the appraisals and loan applications produced by STAGGS.

46) However as it turned out GREGG, MERKLEY, working through defendant STAGGS, and STAGGS himself, materially misrepresented at all times facts relating to the condition, occupancy, and value of each of the subject properties. In each instance the properties sold to plaintiff were located in undesirable areas, were overvalued and in need of extensive repairs. Likewise the tenants, who were rented the properties, were all section 8 tenants, who would stay in the property for a month or two and then vacate the premises after vandalizing the property. In the case of one property located on Texas Avenue, in Jackson, Mississippi it was represented that the property was "recently rehabbed" with an appraised value was $63,000.00. However it turned out the value of the house was extremely overstated such that when plaintiff tried to sell the property it was appraised at its true value of only $2,000.00. As it turned out all

10

the values of the properties sold to plaintiffs and each of them were similarly misrepresented as to their condition, occupancy rate, and true value.

47)    As a result of defendant's and each of their fraudulent misrepresentations caused plaintiff to suffer hundred's of thousands of dollars in damages, while the defendants s and each of them made significant profits from fees and commissions generated from, management fees, sale and financing of the subject properties using plaintiffs money and credit.

## SECOND CAUSE OF ACTION:

### (Negligence against all the Defendants and Does 1-100)

48)    Plaintiff hereby re-alleges as fully set forth herein General Allegations of paragraphs 1 through 35 of the General Allegations, and paragraphs 36 through 47 in the First cause of Action.

49)    Plaintiff believes and hereby alleges that ALLEN, STAGGS and each one of them owed to plaintiff a duty of care to keep him from harm whether it was defendant ALLEN in representing that he was selecting plaintiff to work directly with him, to be the next "millionaire success story" or STAGGS who had a duty to represent the true values of the properties,  the true condition of the properties, and the actual estimated profits plaintiff could realize from rentals from the properties plaintiff purchased. Likewise each defendant bank and mortgage company also owed plaintiff a duty of care to evaluate the appraisals and loan applications provided by defendant STAGGS on which they subsequently relied in lending the plaintiff nearly $700,000.00 to purchase the properties and paying tens of thousands of dollars in  commissions to defendant STAGGS.

50)    Plaintiff believes and hereby alleges that each these defendants' breached their duty of care to him, in that each made material misrepresentations which they knew or should have known were false, and upon which falsity they knew or should have known would cause plaintiffs to suffer substantial losses.

51) Plaintiff further believes and herein alleges that lenders FREEDOM MORTGAGE and AURORA breached their duty to plaintiff in that each had a duty of care to scrutinize the

11

loan applications prepared by defendant STAGGS, as the branch manager for each of these companies that when they were submitted by plaintiff to these defendants for financing the purchase of these properties and they had further duty to plaintiff to assure the information they were provided by defendant, STAGGS was not only accurate including the information STAGGS related to the value and condition of the properties they were financing.

52) Plaintiff further alleges and herein believes that defendant's and each of them were the actual and proximate cause of plaintiff's damages in that but for, the defendant's and each of their misrepresentations and/or failure to verify the accuracy of the information provided them in making loans on the subject properties caused the damages sustained by the plaintiff and that it was foreseeable that the defendant's failure and each of them to verify the accuracy of the information provided them and the failure to accurately characterize the condition and value of the subject properties would result in damage to plaintiff.

53) In fact plaintiff did sustain hundreds of thousands of dollars in damages caused from defendants and each of their negligence in which defendant's and each them took their own self-interests to get the fees, commissions and monies paid to them, from the sale and financing of the subject properties purchased by the plaintiff.

### THIRD CAUSE OF ACTION:

### (Breach of Contract against All Defendants and Does 1-100)

54) Plaintiff hereby re-alleges as fully set forth herein  paragraphs 1 through 35 of the General Allegations, paragraphs 36 through 47 of the First cause of Action and paragraphs 48 through 53 of the Second cause of action as though fully set forth hereat.

55) Plaintiff believes and hereby alleges that the defendants and each of them breached their contractual obligations of good faith and fair dealing to the plaintiff pursuant to the holding of *Sutherland v. Barclays American Mortgage Corporation.*, (1977) 53 Cal App. 4th 299, 61 CalRptr2d 614, "In every contract there is an implied covenant of good faith and fair dealing by each party not to do anything which will deprive the other of the benefits of the contract, and a breach of this covenant by failure to deal fairly or in good faith gives rise to an

12

action for damages."

56)     In the present case plaintiff paid defendant ALLEN $8,000.00 to work with him "one on one" so that he would be ALLEN's next "millionaire success story;" however, defendant, ALLEN referred plaintiff to PROSPER, INC. Defendant, ALLEN breached the contract with plaintiff because ALLEN no longer performed his contractual obligation to the plaintiff, instead ALLEN delegated his duties to his surrogates, defendant, PROSPER, INC, BENSON, MERKLEY, GREGG, and defendant, STAGGS by panning off his responsibility to work directly with plaintiff.

57) Defendants ALLEN and PROSPER, INC. further breached their contract with plaintiffs by failing to oversee and control the actions of those they referred to plaintiff even though each represented to plaintiff that they worked directly with defendant, ALLEN.

58)     The covenant of good faith and fair dealing implied in all contracts requires the defendants and each one to act honestly and make truthful disclosures and representations of material fact upon which plaintiff could rely. Instead none of the defendants including the mortgage companies and lenders who made loans to plaintiffs performed their contractual obligations. In particular MERKLEY, GREGG and defendant STAGGS produced bogus property profiles which grossly inflated the value of the properties purchased as well as the condition of the properties and their occupancy rates. This information was then used by defendant STAGGS to obtain various loans. None of the defendants, including the lenders even questioned the misrepresentations contained in the appraisals or the loan applications submitted to them.

59)     Instead based upon this clearly bogus information the lenders provided plaintiff financing. Nonetheless, it is well settled law that fraud vitiates consent and therefore plaintiff did not assent to the loans he obtained and has therefore been damaged in an amount within the minimum jurisdiction of this court. Therefore plaintiff seeks such legal and equitable remedies sufficient to compensate him for the defendants' and each of their intentional and deliberate acts resulting from their breach of their obligation of good faith and fair dealing inherent in every

13

contract.

## FOURTH CAUSE OF ACTION:

### (Rescission of Contract with Constructive Trust against All Defendants and Does 1-100)

60)     Plaintiff hereby re-alleges as fully set forth herein paragraphs 1 through 35 of the General Allegations, paragraphs 36 through 47 of the First cause of action, paragraphs 48 through 52 the Second cause of action and paragraphs 53 through 59 of the Third cause of action as though fully set forth hereat.

61)     Plaintiff alleges and herein claims that the fraudulent misrepresentations made by defendants' and each of them are grounds for rescission of all contractual obligations owed by them. It is well settled that fraud vitiates consent. As a result of the defendant's and each of their fraudulent misrepresentations and/or omissions plaintiff could not have assented to any of the transactions entered into between the parties because they did not possess accurate or truthful facts upon which to base their agreement with the plaintiff.

62)     The plaintiff believes and herein alleges that each and every misrepresentation made by the defendants and each of them are cause for the plaintiffs to seek equitable remedy of rescission. Rescission is the cancellation of a contract and return of the parties to the position they would have occupied had the contract not been made.

63)     Plaintiff seeks rescission of all alleged contracts entered into between himself and defendants and each of them, in that each so called contracts entered into were entered into by fraudulent means with malice on the part of the defendants and each of them. Had the plaintiff known the truth behind the defendants schemes and misrepresentations he would never have gone forward with the contracts presented to them.

64)     Thus the plaintiffs seeks from the court to cancel, vacate and/or annul all said contractual obligations entered into between plaintiffs and the defendants, and each of them, and to return each party to the *status quo ante*, position they would have been in had these alleged contracts not been entered into. Furthermore where rescission is not practicable or is unable to make the plaintiff whole plaintiff is entitled recover exemplary and /or punitive damages against

14

the defendants and each one arising out of the defendant's and each one of their fraud, malice and misrepresentation.

65)   Additionally, defendants and each of them received or caused mortgage payments to be made by plaintiff. Plaintiff has made all payments in a timely manner and in accordance with the terms of his loan agreements. However, defendants, and each of them caused said payments to be made fraudulently and based on false representations.

66)   Plaintiff believes and hereby alleges that to date he has made payments and/or lost value due to the overstated value of the subject properties in excess of $400,000.000. These loans were based on property values and other information used to fund these loans that were grossly exaggerated or which defendants and each one of them omitted or failed to disclose material facts revealing the extent of damages and/or repairs needed to make these properties habitable.

67)   Plaintiff believes and herein alleges that none of these payments and resulting losses would have occurred but for the defendants and each of their negligence, fraud, breach of Contract as alleged herein.

68)   Plaintiffs believe and hereby allege that he made improvements to the subject properties in excess of $50,000.00 in addition to the mortgage payments they have made on the subject properties. Plaintiff also believes and herein alleges that the defendant's benefited from the repairs to the properties paid for by the plaintiff

69)   Plaintiff also estimates his losses from defendants' overstatement of equity to be $300,000.00.

70)   Plaintiff therefore seeks a constructive trust to rescind all alleged contracts with the defendants and each of them to hold plaintiffs harmless from all further loan obligations and to hold all payments made by plaintiff in as constructive trustee for the benefit of the plaintiff; therefore the court should impose a constructive trust on defendants and each of them for all monies paid by plaintiff in reliance on defendants' and each of their fraudulent misrepresent-ations and negligence as herein alleged.

///

15

**FIFTH CAUSE OF ACTION:**

**(Declaratory Relief Against All Defendants and Does 1-100)**

71)    Plaintiff hereby re-alleges as fully set forth herein paragraphs 1 through 35 of the General Allegations, paragraphs 36 through 47 of the First cause of action, paragraphs 48 through 52 the Second cause of action and paragraphs 53 through 59 of the Third cause of action and paragraphs 60 through 70 of the Fourth Cause of Action as though fully set forth hereat.

72)    An actual case or controversy has now arisen between the plaintiff and the defendants, and each of them named herein concerning the written agreements he entered into as result of the defendant's and each of their fraudulent misrepresentations, breach of contract, breach fiduciary duty and conspiratorial acts committed against plaintiff, that includes but is not limited to: the amount of all mortgage payments made by plaintiff, cost of repairs/improvements made to the subject properties, the loss equity and overpayments made due to overstatement of the value of the said properties all of which are claims upon which plaintiff seeks declaratory relief.

73)    As a result, plaintiff seeks declaratory relief to include restitution equaling $50,000.00 paid by plaintiffs to defendants and plaintiff seeks relief of $275,000.00 he paid for two (2) of the subject properties which have been found to only have nominal value, and $20,000.00 in interest and $10,000.00 in taxes paid for these two (2) properties.

74)    Plaintiff alleges that defendants, and each of them, negligently allowed their representatives, agents and employees to make false and fraudulent statements in breach of the provisions of California Civil Code §2924.5 which caused the plaintiff to take actions detrimental to his interests.

75)    Plaintiff alleges that the defendants and each of them had a fiduciary duty to the plaintiff, that the defendants, and each of them breached their fiduciary duty to the plaintiff in having put their own self-interests ahead of the plaintiff's.

76)    Plaintiff alleges that the defendants, and each of them were involved in a civil conspiracy and that actions taken by these defendants was designed to frustrate the plaintiff in that the defendants and each of their material misrepresentations furthered their conspiratorial enterprise which depriving the plaintiff of the benefit of the bargain which he had intended as

16

result of the contracts plaintiff entered into with defendants, and each of them.

76) That as a result of defendant's actions, plaintiffs are entitled to have the court declare, rescind and /or void all contractual obligations owed by the plaintiffs to all defendants, due to the fraud and misrepresentations as alleged herein and that plaintiff returning the parties to the status quo as if these transactions had not occurred.

**WHEREFORE,** plaintiff prays for judgment against the defendants, jointly and severally as follows:

**ON THE FIRST CAUSE OF ACTION:**

1) For general and special damages according to proof at the time of trial;

2) For punitive and exemplary damages;

3) For attorney fees and costs as allowed by law;

4) For costs of suit herein;

5) For pre-judgment and post-judgment interest according to proof, and;

6) For such other and further relief as this court may deem just and proper.

**ON THE SECOND CAUSE OF ACTION:**

1) For general and special damages according to proof at the time of trial;

2) For attorney fees and costs as allowed by law;

3) For costs of suit herein;

4) For pre-judgment and post-judgment interest according to proof, and;

5) For such other and further relief as this court may deem just and proper.

**ON THE THIRD CAUSE OF ACTION:**

1) For general and special damages according to proof at the time of trial;

2) For attorney fees and costs as allowed by law;

3) For costs of suit herein;

4) For pre-judgment and post-judgment interest according to proof, and;

5) For such other and further relief as this court may deem just and proper.

**ON THE FOURTH CAUSE OF ACTION:**

1) A judgment by the court rescinding all contractual obligations owed by plaintiff's to defendants, and that they hold plaintiff harmless from any future action.

2) For constructive trust to be imposed;

17

3) For attorney's fees and costs as allowed by law, and;

4) For such other further relief as this court may deem just and proper.

**THE FIFTH CAUSE OF ACTION:**

1) For declaratory relief as prayed for;

2) That the subject properties and an amount equaling the total of all payments made by plaintiff to defendants be held in constructive trust, and;

2) For an order compelling defendants reimburse plaintiff for all amounts paid on his behalf to fix, repair or otherwise make habitable said properties, and;

3) For the cost of suit herein, and;

4) For such other and further relief as this Court may deem just and proper.

Dated September 1, 2011

**LAW OFFICE OF ANDREW JAY KULICK**

/s/ _____

Andrew Kulick, Esq.

Attorney for Plaintiff, FRANK DUFOUR

**PLAINTIFFS' COMPLAINT**

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

### Central District of California

| | |
|---|---|
| FRANK DUFOUR, an individual | )<br>)<br>) |
| *Plaintiff* | ) |
| v. | )  Civil Action No. |
| ROBERT ALLEN,<br>(see attached) | )<br>)  **CV11-8054** CASSS<br>) |
| *Defendant* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  ANDREW JAY KULICK
21704 West Golden Triangle Road, Suite 301
Saugus, California 91350-2617

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date:   SEP  2 8 2011

_____
*Signature of Clerk or Deputy Clerk*

Andrew Jay Kulick, State Bar Number: 134567
℅ LAW OFFICES OF ANDREW JAY KULICK
21704 West Golden Triangle Road, Suite 301
Saugus, California 91350-2617
Telephone/Fax: (661) 253-1543
Internet:

Attorney for Plaintiff, FRANK DUFOUR, an individual

## UNITED STATES FEDERAL DISTRICT COURT,

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK DUFOUR, an individual, | Case Number: |
| Plaintiff. | **Complaint For:** |
| v. | 1) Fraud and Misrepresentation |
| ROBERT ALLEN an individual, | 2) Negligence; |
| ENLIGHTENED WEALTH INSTITUTE | 3) Breach of Contract; |
| INTERNATIONAL. L.C a Utah corporation, | 4) Recession with Constructive Trust; |
| ENLIGHTENED WEALTH INSTITUTE, | 5) Declaratory Relief. |
| L.C. a Utah corporation, PROSPER INC, a | |
| Utah corporation, GREEN PLANET f/k/a | |
| FREEDOM MORTGAGE, an unknown | |
| business entity, PNC BANK f/k/a | |
| NATIONAL CITY, an unknown business | |
| entity, OPTEUM n unknown business entity, | |
| MIDLAND MORTGAGE COMPANY, an | |
| unknown business entity, AURORA LOAN | |
| SERVICES, an unknown business entity, | |
| SHERSON LEHMAN, an unknown business | |
| entity, CHARLIE PAYNE, an individual, | |
| TRENT STAGGS, an individual and DOES 1 | |
| through 10 , inclusive, | |
| Defendants. | |

Plaintiff, FRANK DUFOUR, an individual, (hereinafter referred to as "plaintiff") alleges:

///

1

**PLAINTIFFS' COMPLAINT**

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

| | |
|---|---|
| FRANK DUFOUR *,an individual* | ) |
| *Plaintiff* | ) |
| v. | ) |
| ROBERT ALLEN, *(see attached)* | ) |
| *Defendant* | ) |

Civil Action No.

## CV11-8054 *(CAS(SSx)*

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   ANDREW JAY KULICK
21704 West Golden Triangle Road, Suite 301
Saugus, California 91350-2617

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:   SEP 2 8 2011

SUSANA P. BUSTAMANTE

*Signature of Clerk or Deputy Clerk*

S E A L

1  Andrew Jay Kulick, State Bar Number: 134567
   % LAW OFFICES OF ANDREW JAY KULICK
2  21704 West Golden Triangle Road, Suite 301
   Saugus, California 91350-2617
3  Telephone/Fax: (661) 253-1543
   Internet:
4

5  Attorney for Plaintiff, FRANK DUFOUR, an individual

6

7            **UNITED STATES FEDERAL DISTRICT COURT,**

8              **CENTRAL DISTRICT OF CALIFORNIA**

9

| | |
|---|---|
| 10  FRANK DUFOUR, an individual, | ) Case Number: |
| 11          Plaintiff. | ) **Complaint For:** |
| 12  v. | ) 1) Fraud and Misrepresentation |
| 13  ROBERT ALLEN an individual, | ) 2) Negligence; |
|     ENLIGHTENED WEALTH INSTITUTE | ) 3) Breach of Contract; |
| 14  INTERNATIONAL. L.C a Utah corporation, | ) 4) Recession with Constructive Trust; |
|     ENLIGHTENED WEALTH INSTITUTE, | ) 5) Declaratory Relief. |
| 15  L.C. a Utah corporation, PROSPER INC, a | ) |
| 16  Utah corporation, GREEN PLANET f/k/a | ) |
|     FREEDOM MORTGAGE, an unknown | ) |
| 17  business entity, PNC BANK f/k/a | ) |
| 18  NATIONAL CITY, an unknown business | ) |
|     entity, OPTEUM n unknown business entity, | ) |
| 19  MIDLAND MORTGAGE COMPANY, an | ) |
| 20  unknown business entity, AURORA LOAN | ) |
|     SERVICES, an unknown business entity, | ) |
| 21  SHERSON LEHMAN, an unknown business | ) |
| 22  entity, CHARLIE PAYNE, an individual, | ) |
|     TRENT STAGGS, an individual and DOES 1 | ) |
| 23  through 10 _, inclusive, | ) |
| 24          Defendants. | )— |
| 25 | ) |

26  Plaintiff, FRANK DUFOUR, an individual, (hereinafter referred to as "plaintiff") alleges:

27  ///

28                                          1

―――――――――――――――――――――――――――――――――――――――

                        **PLAINTIFFS' COMPLAINT**

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
FRANK DUFOUR

## DEFENDANTS
ROBERT ALLEN, et al.

(b) County of Residence of First Listed Plaintiff   **LOS ANGELES**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   **LOS ANGELES**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
LAW OFFICES OF ANDREW JAY KULICK
21704 West Golden Triangle Road, Suite 301
Saugus, California 91350-2617   Telephone/Fax: (661) 253-1453

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
　　　Plaintiff

☒ 3  Federal Question
　　　(U.S. Government Not a Party)

☐ 2  U.S. Government
　　　Defendant

☐ 4  Diversity
　　　(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | 　　 Med. Malpractice | ☐ 625 Drug Related Seizure | 　　 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | 　　 Liability | ☐ 365 Personal Injury - | 　　 of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | 　　 Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| 　　 & Enforcement of Judgment | 　　 Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | 　　 Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | 　　 Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | 　　 Liability | 　　 Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| 　　 Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | 　　 Safety/Health | | ☐ 490 Cable/Sat TV |
| 　　 (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | 　　 Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| 　　 of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | 　　 Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | 　　 Property Damage | 　　 Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | 　　 Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 　　 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | 　　 Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | 　　 Injury | | 　　 & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | 　　 Sentence | ☐ 791 Empl. Ret. Inc. | 　　 or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | 　　 Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | 　　 Accommodations | ☐ 530 General | | 　　 26 USC 7609 | 　　 Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination |
| ☒ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | 　　 Under Equal Access |
| | 　　 Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | 　　 to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | 　　 Alien Detainee | | ☐ 950 Constitutionality of |
| | 　　 Other | | ☐ 465 Other Immigration | | 　　 State Statutes |
| | ☐ 440 Other Civil Rights | | 　　 Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1  Original
　　　Proceeding

☐ 2  Removed from
　　　State Court

☐ 3  Remanded from
　　　Appellate Court

☐ 4  Reinstated or
　　　Reopened

☐ 5  Transferred from
　　　another district
　　　(specify)

☐ 6  Multidistrict
　　　Litigation

☐ 7  Appeal to District
　　　Judge from
　　　Magistrate
　　　Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
California Civil Code 2924.5
Brief description of cause:
Fraud & Misrepresentation, Negligence, Breach of Contract, Recession with Constructive Trust, Declaratory Relief

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):

JUDGE

DOCKET NUMBER

DATE
09/28/2011

SIGNATURE OF ATTORNEY OF RECORD

CV11-8054

FOR OFFICE USE ONLY

RECEIPT #　　　AMOUNT　　　APPLYING IFP　　　JUDGE　　　MAG. JUDGE

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Utah |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date   9|28|11

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |