Andrew Jay Kulick, State Bar Number: 134567
% LAW OFFICES OF ANDREW JAY KULICK
21704 West Golden Triangle Road, Suite 301
Saugus, California 91350-2617
Telephone/Fax: (661) 253-1543
Internet: ajkrams@gmail.com

Attorney for Plaintiff, FRANK DUFOUR, an individual

# UNITED STATES FEDERAL DISTRICT COURT,
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK DUFOUR, an individual, <br><br> Plaintiff. <br><br> v. <br><br> ROBERT ALLEN an individual, ENLIGHTENED WEALTH INSTITUTE INTERNATIONAL. L.C a Utah corporation, ENLIGHTENED WEALTH INSTITUTE, L.C. a Utah corporation, PROSPER INC, a Utah corporation, GREEN PLANET f/k/a FREEDOM MORTGAGE, an unknown business entity, PNC BANK f/k/a NATIONAL CITY, an unknown business entity, OPTEUM n unknown business entity, MIDLAND MORTGAGE COMPANY, an unknown business entity, AURORA LOAN SERVICES, an unknown business entity, SHERSON LEHMAN, an unknown business entity, CHARLIE PAYNE, an individual, TRENT STAGGS, an individual and DOES 1 through 100, inclusive, <br><br> Defendants. | Case Number: CV11-8054 CAS (SSx) <br><br> **First Amended Complaint For:** <br><br> 1) Fraud and Misrepresentation <br> 2) Negligence; <br> 3) Breach of Contract; <br> 4) Recession with Constructive Trust; <br> 5) Declaratory Relief. <br><br> **Courtroom:** 5 <br><br> **District Judge:** Honorable Judge, Christina A. Snyder <br><br> **Discovery Magistrate Judge:** Honorable Magistrate, Suzanne H. Segal |

Plaintiff, FRANK DUFOUR, an individual, (hereinafter referred to as "plaintiff") alleges:

1

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

## GENERAL ALLEGATIONS:

1) Plaintiff is an individual, residing in the State of California, County of Los Angeles.

2) The jurisdiction of this Court over the subject matter of this action is predicated on 28 USC §1332. The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

3) Plaintiff is informed and believes and herein alleges that defendant, ROBERT ALLEN is an individual residing in the State of Utah.

4) Defendant, ROBERT ALLEN promotes and conducts real estate seminars in the State of California, County of Los Angeles by and through his corporation entitled ENLIGHTENED WEALTH INSTITUE INTERNATIONAL, L.C. (hereinafter referred to as "EWI") a Utah corporation.

5) Defendant, ROBERT ALLEN also promotes and conducts real estate seminars in the State of California, County of Los Angeles by and through his corporation entitled ELIGHTENED WEALTH INSTITUTE, L L.C. also a Utah corporation (hereinafter referred to as "EWI-2")

6) Plaintiff alleges that defendant, TRENT STAGGS is an individual who was the former branch manager of co-defendant FREEDOM MORTGAGE who is doing business out of the State of Virginia (hereinafter referred to as FREEDOM) whose successor in interest is defendant, GREEN PLANET, who is doing business out of the State of Connecticut, which is an unknown business entity. FREEDOM was doing business in arranging home loans in the State of California, and in the County of Los Angeles.

7) Plaintiff alleges that the defendant, SHEARSON LEHMAN, was doing business out of the State of Colorado and is an unknown business entity doing business in the County of Los Angeles, State of California.

8) Plaintiff alleges that defendants PNC BANK f/k/a NATIONAL CITY, was doing business out the states of Kentucky and/or Ohio are unknown business entities who were at all times entities who obtained home loans from TRENT STAGGS as result of a on going unknown relationship with each of the home loan lenders in his capacity as either an employee or agent.

2

9) Plaintiff alleges that defendant OPTEUM FINANCIAL SERVICES (hereinafter referred to as "OPTEUM") was doing business out of the State of New Jersey, is an unknown business entity doing business in the County of Los Angeles, State of California.

10) Plaintiff alleges that MIDLAND MORTGAGE (hereinafter referred to as "MIDLAND") is doing business out of the State of Oklahoma, is an unknown business entity doing business in the County of Los Angeles, State of California.

11) Plaintiff alleges that PROSPER INC. (hereinafter referred to as "PROSPER") is a Utah corporation doing business in the County of Los Angeles, State of California.

12) Plaintiff alleges that defendant CHARLIE PAYNE is an individual residing in the state of Mississippi doing business in the County of Los Angeles, State of California as a real estate appraiser.

13) Plaintiff alleges that defendant AURORA LOAN SERVICES (hereinafter referred to as "AURORA") is doing business out of the state of Colorado, is an unknown business entity doing business in the County of Los Angeles, State of California.

14) Plaintiff is informed and believes and upon such information and belief alleges that the defendants, named herein as DOES 1 through 100, are domiciled outside the State of California and/or doing business in the State of California; that the true organizational structure and/or ownership of defendants' DOES 1 through 100 is unknown to plaintiff at this time. Plaintiff is informed and believes and thereon alleges that the defendants named as DOES 1 through 100, whether individual, corporate or otherwise are unknown to plaintiff and therefore plaintiff sues said defendants, DOES 1 through 100, by such fictitious names. Plaintiff will amend this complaint when the true name(s) and capacity(s) of said defendants', DOES 1 through 100 have been ascertained.

15) Plaintiff alleges that each of these defendants, including those herein named DOES are the agents, servants and employees of each co-defendant, including defendant, AURORA and in doing the things herein alleged each acted within the course and scope of such agency and employment with full knowledge and consent of the remaining co-defendants.

3

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

16) At all times herein mentioned, unless otherwise expressly set forth herein, defendants and each of them conducted business with plaintiff, and entered into contracts with him within the County of Los Angeles, State of California and/or obligations upon which this action is based, were incurred by defendants and each of them in above named Court District and/or the defendants, and each of them resided in the above named Court district upon which this action is based and obligation were incurred.

17) Defendant, ROBERT ALLEN (hereafter referred to as "ALLEN") by and through his company EWI or EWI-2, contacted the plaintiff via internet, on or about September 16, 2006 to attend one of defendant ALLEN's, wealth building seminars in which Mr. ALLEN was going to select a few students to work along side of him and join his "success team" which was intended for those who wanted "to learn how to become a millionaire." Defendant, ALLEN concluded his e-mail correspondence by asking "Are you ready to be our next millionaire success story?" After contacting representatives of EWI and going through a series of sham interviews it was determined that plaintiff was one of the select few to work who had been selected to directly work with defendant ROBERT ALLEN.

18) Plaintiff alleges that in reality these interviews were a scam intended to wet the plaintiff's appetite in order to entice him to deprive him of his hard earned earnest money and was a pawn in elaborate "ponzie" scheme.

19) After being qualified plaintiff as student who would work directly with defendant, ALLEN, plaintiff was informed that all he had to do after attending defendant ALLEN's seminar was use ALLEN'S study materials, follow the guidance of his coaches and pay defendant ALLEN eight thousand ($8,000.00) dollars to get started.

20) Plaintiff, FRANK DUFOUR, is a retired doctor, lives on fixed income and finding his income dramatically decreased, needed to look for a part-time career to supplement his retirement income. Plaintiff was ripe for ALLEN'S sales pitches, promising that if he strictly followed defendant ALLEN's recommendations he would be the **"next millionaire success story"** and all he had to do was pay the defendant, ALLEN the $8,000.00 fee which he did.

21) In turn defendant ALLEN referred plaintiff to co-defendant PROSPER, INC. (hereinafter referred to as "PROSPER") located in Provo, Utah. Plaintiff alleges that PROSPER is an affiliated company of defendant, ALLEN. Defendant, PROSPER provided the plaintiff with his study materials and assigned him a coach. This coach would then work with plaintiff via a series of ten (10) one on one coaching sessions and help him implement ALLEN's "wealth creation system" as he called it.

22) Plaintiff did in fact receive a series of weekly coaching sessions provided by one of PROSPER'S employees, who identified himself as TODD BENSON (hereafter referred to as "BENSON") BENSON coached plaintiff an hour a week for a period of ten (10) weeks. Near the end of the ten (10) week period BENSON told plaintiff that they could help the plaintiff get started implementing ALLEN's "wealth creating system" by referring him to someone who could locate income producing properties, help him obtain financing so that plaintiff could purchase these properties and that he would be on his way to becoming a millionaire.

23) Plaintiff was referred to a person who identified herself as EMILY MERKLEY (hereafter referred to as "MERKLEY"). BENSON represented to plaintiff that Ms. MERKLEY was a former student of ALLEN's and was one of the success stories, who was now employed with a company entitled CFE Mortgage (hereinafter referred to as "CFE").

24) Plaintiff contacted MERKLEY believing she would help them procure properties as stated by BENSON. MERKLEY represented herself as one of the principal owners of CFE Mortgage. MERKLEY affirmed what plaintiff had been told by defendant BENSON, that she could locate properties for him to invest in, finance the purchases and then help him manage the properties. Thereafter MERKLEY began sending via e-mail, the plaintiff, information on various properties. All of these properties which MERKLEY sent plaintiff information on were located outside the state of California.

25) After a few weeks of this, MERKLEY then referred plaintiff to a person identified as KENNY GREGG (hereinafter referred to as "GREGG"). MERKLEY represented that Mr. Gregg was another student of defendant ALLEN, and had also worked with her and another "success"

using defendant, ALLEN's program. MERKLELY told the plaintiff that GREGG could arrange and facilitate the purchase of several properties that MERKLEY had previously provided the plaintiff and in particular several properties located in Jackson, Mississippi which were available for sale which according to MERKLEY were "well below market value."

26) Plaintiff contacted GREGG, who represented to plaintiff that if he purchased the Jackson, Mississippi properties, plaintiff would make between $100.000.00 and $150.000.00 above taxes and expenses per month in cash flow once he rented them out. Additionally, as an incentive to purchase these properties GREGG told plaintiff that these real property investments would increase in value anywhere between 3% to 7% annually. Pursuant to these conversations and the representations made by GREGG the plaintiff was excited about the prospects of purchasing these properties.

27) In subsequent telephone conversations with GREGG about the Jackson, Mississippi properties, GREGG told the plaintiff that these four (4) single family residences were tenant occupied and "fully rehabbed" and if he purchased several of these houses GREGG had for sale these properties already had "equity" already built into them for positive cash flow. GREGG stated that he needed to sell these properties quickly in order to "free up some funds for another venture" he was involved in. He stated that surrounding area maintained a 90% occupancy rate and that if plaintiff purchased these properties it would be like buying them "wholesale" at the current market rate. GREGG e-mailed plaintiff property profiles in which it was documented that the rentals of similar properties in the areas were generating between $450.00 and $650.00 per month in gross income with a 90% occupancy rate.

28) Enticed by the information provided and believing that everything seemed like it was going forward according to defendant, ALLEN's plan, Plaintiff received appraisals from an appraiser identified as CHARLAY PAYNE. These appraisals identified the real properties actual value as that which had been represented to plaintiff by GREGG the properties were worth. As a result on or about November 15, 2006 MERKLEY e-mailed the plaintiff a *purchase offer agreement* to buy two (2) of the Jackson, Mississippi properties. GREGG estimated escrow

closing within thirty (30) days. Defendant GREGG shortly thereafter e-mailed plaintiff four (4) additional purchase offer agreements for an additional four (4) properties located in Jackson, Mississippi.

29) As a result, plaintiff was enticed to purchase these additional properties, which defendant GREGG told plaintiff would be "flipped" right away. Plaintiff purchased these properties in Jackson, Mississippi for $135,000.00 a piece.

30) At that time plaintiff owned eight (8) properties in Jackson, Mississippi.

31) Defendant GREGG told the plaintiff he could help him obtain financing for these properties because he also worked for a loan agent named defendant TRENT STAGGS (hereinafter referred to as "STAGGS") who was a loan broker for CFE MORTGAGE and also the STAGGS MORTGAGE GROUP. Thereafter plaintiff did pursue financing through GREGG, STAGGS and CFE MORTGAGE.

32) Defendant, STAGGS arranged financing for the properties which were purchased by plaintiff through defendants, MILENIUM HOME LOANS, OPTEUM FINANCIAL SERVICES and later through MIDLAND MORTGAGE. Plaintiff further alleges and herein believes that STAGGS, was at all times the driving force, behind these deals, who controlled all information that was provided to plaintiff by MERKLEY and GREGG, including but not limited to the property profiles, appraisals, loan information and strategies that were made by MERKLEY and GREGG to entice the plaintiff to purchase these properties.

33) On or about June 20, 2006 and thereafter using the plaintiff's money and credit, GREGG with the help of defendant, STAGGS ended up selling numerous Jackson, Mississippi properties to plaintiff.

34) In December 2006 having not received the promised income necessary to become a millionaire plaintiff was entered into a property management agreement with a person identified as JOHN BELL (hereinafter referred to as "BELL") and defendant STAGGS whereby they would effectuate the promised returns on plaintiff's investment. BELL and defendant, STAGGS would collect a fee each time they rented out one of the properties and actively manage the

properties for the plaintiff so that he could obtain the promised return on his investment. Plaintiff paid defendant, STAGGS the sum of $50,000.00. BELL and defendant STAGGS did rent these properties; however they rented the properties to tenants via a series of short-term lease agreements. The tenants vandalized properties stealing such things as the air conditioning units, and other fixtures. As a result, instead of making money as promised, plaintiff was losing money, spending thousands of dollars making repairs to the damaged units each time a tenant moved out. On the other hand defendants BELL and STAGGS continued to collect their management fee each time they moved in a new tenant in and for their active management of these properties

35) On or about October 2007 it became evident to the plaintiff that he needed to sell these problematic properties because they were costing him thousands of dollars to maintain. He asked GREGG and defendant STAGGS to help him sell the properties; however plaintiff was informed that the property values of these properties had substantially dropped and in the case of one of the properties which plaintiff had purchased only a few months before for $63,000 was now only worth $2,000.

36) After several months of unsuccessfully trying to sell the properties BELL dropped out of sight taking with him $6,000.00 of plaintiff's recently received repair money. Likewise shortly thereafter defendant STAGGS stopped returning the plaintiff's phone calls and also dropped out of sight.

37) In his efforts to recoup his losses plaintiff called defendants FREEDOM MORTGAGE, and AURORA because defendant STAGGS worked for them as a branch manager and in fact the majority of the loans that were done through STAGGS were procured through FREEDOM MORTGAGE and AURORA.

38) On January 5, 2010, plaintiff attended the deposition of STAGGS at that time plaintiff learned that the universal loans packaged by defendant STAGGS were in fact a scam, in that the defendant, STAGGS had intentionally misrepresented the true values of the properties by dramatically over-inflating the properties values. Plaintiff alleges that defendant STAGGS using the persons identified as MERKLEY and GREGG knew or should have known the true values of

the properties. Likewise plaintiff further alleges and believes that defendants FREEDOM MORTGAGE and AURORA intentionally turned a blind eye to the loan applications tendered to them by STAGGS even after it was determined the values of these properties were substantially overstated but funded the loans anyways because defendant, STAGGS was a branch manager of these companies and in order to continue to receive monies from plaintiff either in processing the loans or servicing them thereafter.

**FIRST CAUSE OF ACTION:**

**(Fraud/Misrepresentation against Defendant, ALLEN, STAGGS and Does 1-100)**

39) Plaintiff hereby re-alleges as fully set forth herein General Allegations of paragraphs 1 through 38.

40) Plaintiff alleges that defendant, ROBERT ALLEN who is in the business of conducting real estate seminars, providing course materials and contacts employing an aggressive marketing campaign via e-mail and other techniques in order to entice unsuspecting members of the public to attend his so called wealth building seminars throughout Southern California and the United States and that it is at these seminars defendant ALLEN sells his program.

41) In fact, plaintiff was a member of the public contacted by defendant ALLEN through one of his e-mails, asking whether the plaintiff was "ready to be our next millionaire success story?" and that ALLEN was looking for a few "select" students to work along side him and join his "success" team.

42) Plaintiff was then put through an interview process to which he was informed was designed to determine if he was serious individual willing to invest in his future. These interviews consisted of asking plaintiff questions about his personal financial situation. After finishing the interview process, ALLEN's staff congratulated plaintiff on being one of the few selected for ALLEN's program. Plaintiff alleges these interviews were in reality a sham intended to find out how much money plaintiff had and what kind of credit he had. Nonetheless, believing he was one of the few selected to become the next millionaire, plaintiff paid the

9

1  $8,000.00 to ALLEN for his coaching and wealth building system.

2  43) However when plaintiff was contacted by his coach BENSON, referred to by ALLEN is was later learned that BENSON was not employed by ALLEN or his company, EWI, but in reality another company identified herein as defendant, PROSPER, INC. located in Provo, Utah. They supplied plaintiff with study materials required by defendant, ALLEN and so-called coaching needed to become the next millionaire success story.

44) Toward the end of the ten (10) week coaching sessions BENSON offered to help plaintiff get started by introducing him to MERKLEY, another student of the ALLEN wealth building systems. MERKELY was represented to plaintiff by BENSON as one of those success stories using defendant, ALLEN's method. After contacting MERKLEY she offered to send plaintiff property profiles on properties to invest in and then she informed plaintiff she had associates who could help plaintiff acquire real property, tenants and manage the properties acquired.

45) MERKLEY contacted the plaintiff and referred him to GREGG. When Plaintiff contacted GREGG he told plaintiff that he had four (4) properties that "he need to sell in order to free up some funds for another investment he wanted to get into." He further stated that the price for all four (4) properties was less than the cost of one property in California, and besides "if he purchased all four properties it would be like he was getting the properties at last years prices" and that acquiring these properties was like purchasing them for "wholesale" prices.

46) Each of the real property profiles sent by MERKLEY and GREGG stated that each property was in good condition having been recently rehabilitated and that it had a 90% or better occupancy. As it turned out the property profiles and appraisals used to convince plaintiff to buy these real properties were prepared and produced defendant TRENT STAGGS which was unknown to plaintiff at that time.

47) Plaintiff asked MERKLEY and GREGG what realtor he should use. Plaintiff was told he did not need a realtor to transact these purchases and that since GREGG was the party selling the properties, that GREGG, MERKLEY, and their associate defendant STAGGS could

10

PLAINTIFF'S FIRST AMENDED COMPLAINT

represent both sides of the transaction.

48) Justifiably relying on the representations made by GREGG, MERKLEY and STAGGS as to the values and condition of the subject properties plaintiff did in fact purchase the four (4) properties from GREGG. Over the course of several months plaintiff's reliance on the representations made to him led him to purchase further real property from GREGG, each time acquiring financing through STAGGS based on the appraisals and loan applications produced by STAGGS.

49) However as it turned out GREGG, MERKLEY, working through defendant STAGGS, and STAGGS himself, materially misrepresented at all times facts relating to the condition, occupancy, and value of each of the subject properties. In each instance the properties sold to plaintiff were located in undesirable areas, were overvalued and in need of extensive repairs. Likewise the tenants, who were rented the properties, were all section 8 tenants, who would stay in the property for a month or two and then vacate the premises after vandalizing the property. In the case of one property located on Texas Avenue, in Jackson, Mississippi it was represented that the property was "recently rehabbed" with an appraised value was $63,000.00. It turned out the true value of this property was extremely overstated such that when plaintiff tried to sell the property it was appraised for only $2,000.00. As a result all the true values of the real properties sold to plaintiff were similarly misrepresented as well as their condition and ongoing occupancy rate.

50) It was during the deposition of STAGGS on January 5, 2010 that plaintiff realized that he was in fact a victim of a mortgage fraud scheme originated by ALLEN and perpetrated by all the defendants, including AURORA, who colluded amongst themselves to intentionally defraud the plaintiff of his hard earned money secretly failing to reveal that true intention was to induce the plaintiff into entering these transactions and convince him to buy worthless real property they owned and had also purchased using ALLEN's program, knowing full well that the plaintiff was ignorant regarding real property income generating businesses.

51) As a result of defendant's and each of them fraudulent misrepresentations, including

11

PLAINTIFF'S FIRST AMENDED COMPLAINT

defendant, ALLEN who started the ball rolling by indicating that plaintiff was one of the few selected individuals entitled to receive his success program and thereafter referred to him to his other students, MERKLEY, GREGG and STAGGS, who were alleged were coaches, mentors and students that had become successful using ALLEN's program, which has caused the plaintiff to suffer hundreds of thousands of dollars in damages, while the defendants, and each of them made significant profits from fees and commissions generated from, management fees, sales and financing of the subject properties using plaintiff money and credit.

52) As a result plaintiff has suffered both special and general damages legally and proximately caused by defendants negligence in a sum unascertained at this time according to proof at time of trial but in no event less then the minimum jurisdictional limit of this Honorable Court.

53) Plaintiff alleges that the defendants and each of them, ongoing conduct amounting to fraud and misrepresentation were at all times intended to harm plaintiff and in fact did cause plaintiff monetary and other harm and was perpetrated, wantonly recklessly and in conscious disregard of the plaintiff's rights justifying the imposition of punitive and/or exemplary damages in amount to proven at time of trial.

**SECOND CAUSE OF ACTION:**

**(Negligence against all the Defendants and Does 1-100)**

54) Plaintiff hereby re-alleges as fully set forth herein General Allegations of paragraphs 1 through 38 of the General Allegations, and paragraphs 40 through 53 in the First cause of Action.

55) Plaintiff alleges that defendants ALLEN and STAGGS and each one of them owed to plaintiff a duty of care to keep him from harm whether it was defendant ALLEN in representing that he was selecting plaintiff to work directly with him, to be the next "millionaire success story" or STAGGS who had a duty to represent the true values of the properties, the true condition of the properties, and the actual estimated profits plaintiff could realize from rentals from the properties plaintiff purchased. Likewise each named defendant bank, mortgage

company, lending institution or servicer, all of whom knew of ALLEN's ongoing scheme owed plaintiff a duty of care to inform him of the over inflated real property appraisals, but nonetheless lent to plaintiff nearly $700,000.00 to purchase the properties and thereafter collected tens of thousands of dollars in loan processing fees.

56) Plaintiff alleges that each these defendants' breached their duty of care to him, in that each made material misrepresentations which they knew or should have known were false, and upon which falsity they knew or should have known would cause plaintiff to suffer substantial losses in that from the commencement of the transaction, the initial contact made by ALLEN to plaintiff, all the way through the conclusion of the transactions, these defendants knew that they were engaging in fraudulent activities and intentionally neglected each of their responsibilities in ensuring the protection of the plaintiff's interest and consciously deprived the plaintiff of his rights to full disclosure as to their monetary interest in these transactions.

57) Plaintiff further alleges that lenders FREEDOM MORTGAGE and AURORA breached their duty to plaintiff in that each had a duty of care to scrutinize the loan applications prepared by defendant STAGGS, when they were submitted by plaintiff to these defendants and had a further duty to plaintiff to assure the information they were provided by defendant, STAGGS was not only accurate, including the information supplied by STAGGS regarding the values and conditions of the real properties these lenders were financing.

58) As a result plaintiff alleges and herein believes that the defendants' and each of them were the actual and proximate cause of plaintiff's damages in that but for, the defendants' and each of their misrepresentations and/or failure to verify the accuracy of the information provided to them in making loans on the subject properties caused damages sustained by the plaintiff and that it this was a foreseeable consequence of defendants breach of duty to verify the accuracy of the information provided to them which would result in damage to plaintiff.

59) In fact plaintiff did sustain hundreds of thousands of dollars in damages caused from defendants and each of their negligence in which defendant's and each them took their own self-interests to get the fees, commissions and monies paid to them, from the sale and financing of the

subject properties purchased by the plaintiff.

60) As a result plaintiff has suffered both special and general damages legally and proximately caused by defendants negligence in a sum unascertained at this time according to proof at time of trial but in no event less then the minimum jurisdictional limit of this Honorable Court.

## THIRD CAUSE OF ACTION:

### (Breach of Contract against All Defendants and Does 1-100)

61) Plaintiff hereby re-alleges as fully set forth herein paragraphs 1 through 38 of the General Allegations, paragraphs 40 through 53 of the First cause of Action and paragraphs 55 through 60 of the Second cause of action as though fully set forth hereat.

62) Plaintiff alleges that the defendants and each of them breached their contractual obligations of good faith and fair dealing to the plaintiff pursuant to the holding of *Sutherland v. Barclays American Mortgage Corporation.*, (1977) 53 Cal App. 4th 299, 61 CalRptr2d 614, "In every contract there is an implied covenant of good faith and fair dealing by each party not to do anything which will deprive the other of the benefits of the contract, and a breach of this covenant by failure to deal fairly or in good faith gives rise to an action for damages" which was not discovered by plaintiff until January 5, 2010 when the plaintiff attended the deposition of STAGGS.

63) In the present case plaintiff paid defendant ALLEN $8,000.00 to work with him on an going basis "one on one" so that he would be ALLEN's next "millionaire success story. Defendant, ALLEN breached the contract with plaintiff because ALLEN did not perform his contractual obligation to the plaintiff, instead ALLEN delegated his duties to his surrogates, defendant, PROSPER, INC, BENSON, MERKLEY, GREGG, and defendant, STAGGS

64) Defendants ALLEN and PROSPER, INC. further breached their contract with plaintiff by failing to oversee and control the actions of those they referred to plaintiff even though each represented to plaintiff that they working directly with ALLEN.

65) The covenant of good faith and fair dealing implied in all contracts requires the

14

defendants and each one to act honestly and make truthful full disclosures and representations of material fact upon which plaintiff could rely. Instead none of the defendants including the mortgage companies and lenders who made loans to plaintiff performed their contractual obligations. In particular MERKLEY, GREGG and defendant STAGGS supposedly working under the direction of ALLEN, produced bogus property profiles that grossly inflated the value of real properties purchased by plaintiff, as well as the condition of the properties and their occupancy rates. This information was then used by defendant STAGGS to obtain various loans on behalf of the plaintiff in furtherance of ALLEN's program. None of the defendants, including the lenders ever questioned the misrepresentations contained in the appraisals or the loan applications submitted to them.

66) Instead, based upon this clearly bogus information, the lenders provided plaintiff financing. Nonetheless, it is well settled law that fraud vitiates consent and therefore plaintiff did not assent to the loans he obtained and has therefore been damaged in an amount within the minimum jurisdiction of this Honorable court. As a result, plaintiff seeks such legal and equitable remedies sufficient to compensate him for the defendants' and each of their intentional and deliberate acts resulting from their breach of their obligation of good faith and fair dealing inherent in every contract, including the recession of these contracts and in return plaintiff will return and tender all the consideration he received, namely the real properties financed by these lenders.

## FOURTH CAUSE OF ACTION:

**(Rescission of Contracts, Constructive Trust against All Defendants and Does 1-100)**

67) Plaintiff hereby re-alleges as fully set forth herein paragraphs 1 through 38 of the General Allegations, paragraphs 40 through 53 of the First cause of action, paragraphs 55 through 60 the Second cause of action and paragraphs 62 through 66 of the Third cause of action as though fully set forth hereat.

68) Plaintiff alleges that the fraudulent misrepresentations made by defendants' and each of them are grounds for rescission of all contractual obligations owed by them. It is well settled

that fraud vitiates consent. As a result of the defendant's and each of their fraudulent misrepresentations and/or omissions plaintiff could not have assented to any of the transactions entered into between the parties because they did not possess accurate or truthful facts upon which to base their agreement with the plaintiff.

69) The plaintiff alleges that each and every misrepresentation made by the defendants and each of them are grounds for recession of all contracts he entered into with these defendants. Rescission is the cancellation of a contract and return of the parties to the position they would have occupied had the contract not been made.

70) Plaintiff seeks rescission of all alleged contracts entered into between himself and defendants and each of them, in that each so called contracts entered into were entered into by fraudulent means with malice on the part of the defendants and each of them. Had the plaintiff known the truth behind the defendants schemes and misrepresentations he would never have gone forward with the contracts presented to them.

71) Thus the plaintiff seeks from the court to cancel, vacate and/or annul all said contractual obligations entered into between plaintiff and the defendants, and each of them, and to return each party to the *status quo ante*, position they would have been in had these alleged contracts not been entered into. (Plaintiff would have included the other party, his wife to these contracts as party plaintiff, but she passed away before this lawsuit was initiated.) Furthermore where rescission is not practicable or is unable to make the plaintiff whole plaintiff is entitled recover exemplary and /or punitive damages against the defendants and each one arising out of the defendant's and each one of their fraud, malice and misrepresentation.

72) Additionally, defendants and each of them received and continue to receive mortgage payments made by plaintiff on a monthly basis. Plaintiff has made all payments and continues to make his mortgage payments in a timely manner and in accordance with the terms of his loan agreements. However, defendants, and each of them caused said payments to be made fraudulently and based on false representations.

73) Plaintiff alleges that to date he has made payments and/or lost value due to the

over stated value of the subject properties in excess of $400,000.000. These loans were based on real property values and other information used to fund these loans that were grossly exaggerated or which defendants and each one of them omitted or failed to disclose material facts revealing the extent of damages and/or repairs needed to make these properties habitable.

74) Plaintiff alleges that none of these payments and resulting losses would have occurred but for the defendants and each of their negligence, fraud, breach of contract as alleged herein. Plaintiff estimates his losses just from defendants' overstatement of equity to be $300,000.00.

75) Plaintiff alleges that he made improvements to the subject properties in excess of $50,000.00 and requests this sum in addition to return of all mortgage payments he has made on the subject properties as a condition of recession. Plaintiff alleges that the defendants have benefited from the repairs to the properties paid for by the plaintiff.

76) Plaintiff therefore seeks a constructive trust to rescind all alleged contracts with the defendants and each of them to hold plaintiff harmless from all further loan obligations and to hold all payments made by plaintiff in as constructive trustee for the benefit of the plaintiff; therefore, this Honorable Court should impose a constructive trust on defendants and each of them for all monies paid by plaintiff in reliance on defendants' and each of their fraudulent misrepresentations and negligence as herein alleged and plaintiff agrees to "return" the real properties, provided all of the defendants, "return" to plaintiff all consideration paid by plaintiff.

**FIFTH CAUSE OF ACTION:**

**(Declaratory Relief against All Defendants and Does 1-100)**

77) Plaintiff hereby re-alleges as fully set forth herein paragraphs 1 through 38 of the General Allegations, paragraphs 40 through 53 of the First cause of action, paragraphs 55 through 60 the Second cause of action and paragraphs 62 through 66 of the Third cause of action and paragraphs 68 through 76 of the Fourth Cause of Action as though fully set forth hereat.

78) An actual case or controversy has now arisen between the plaintiff and the defendants, and each of them named concerning the written agreement(s) entered into by the

parties, as result of the defendants and each of their fraudulent misrepresentations, breach of contract, breach fiduciary duty and conspiratorial acts committed against plaintiff, that includes but is not limited to: the amount of all mortgage payments made by plaintiff, cost of repairs/ improvements made to the subject properties, the loss equity and overpayments made due to overstatement of the value of the said properties all of which are claims upon which plaintiff seeks declaratory relief.

79) Plaintiff seeks declaratory relief to include restitution from the defendants paid for the subject properties which have been found to have only nominal value, interest and taxes paid on these properties.

80) Plaintiff alleges that defendants, and each of them, negligently allowed their own representatives, agents and employees to make false and fraudulent statements which caused the plaintiff to take actions detrimental to his interests.

81) Plaintiff alleges that the defendants, and each of them were involved in a civil conspiracy and that actions taken by these defendants was designed to frustrate the plaintiff in that the defendants and each of their material misrepresentations furthered their conspiratorial enterprise which depriving the plaintiff of the benefit of the bargain which he had intended as a result of the contract(s) plaintiff entered into with defendants, and each of them.

82) As a result of defendants actions, plaintiff is entitled to have the court declare, rescind and /or void all contractual obligations owed by the plaintiff to all defendants, due to the fraud and misrepresentations as alleged herein and that plaintiff returning the parties to the status quo as if these transactions had not occurred.

**WHEREFORE,** plaintiff prays for judgment against the defendants, jointly and severally as follows:

**ON THE FIRST CAUSE OF ACTION:**

1) For general and special damages according to proof at the time of trial;

2) For punitive and exemplary damages;

3) For attorney fees and costs as allowed by law;

4) For costs of suit herein;

5) For pre-judgment and post-judgment interest according to proof, and;

6) For such other and further relief as this court may deem just and proper.

**ON THE SECOND CAUSE OF ACTION:**

1) For general and special damages according to proof at the time of trial;

2) For attorney fees and costs as allowed by law;

3) For costs of suit herein;

4) For pre-judgment and post-judgment interest according to proof, and;

5) For such other and further relief as this court may deem just and proper.

**ON THE THIRD CAUSE OF ACTION:**

1) For general and special damages according to proof at the time of trial;

2) For attorney fees and costs as allowed by law;

3) For costs of suit herein;

4) For pre-judgment and post-judgment interest according to proof, and;

5) For such other and further relief as this court may deem just and proper.

**ON THE FOURTH CAUSE OF ACTION:**

1) A judgment by the court rescinding all contractual obligations owed by plaintiff's to defendants, and that they hold plaintiff harmless from any future action.

2) For constructive trust to be imposed;

3) For attorney's fees and costs as allowed by law, and;

4) For such other further relief as this court may deem just and proper.

**THE FIFTH CAUSE OF ACTION:**

1) For declaratory relief as prayed for;

2) That the subject properties and an amount equaling the total of all payments made by plaintiff to defendants be held in constructive trust, and;

2) For an order compelling defendants reimburse plaintiff for all amounts paid on his behalf to fix, repair or otherwise make habitable said properties, and;

3) For the cost of suit herein, and;

4) For such other and further relief as this Court may deem just and proper.

Dated December 16, 2011          LAW OFFICES OF ANDREW JAY KULICK

/s/ _____
Andrew Kulick, Esq.

**PLAINTIFF'S FIRST AMENDED COMPLAINT**